UNITED STATES COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| United States | No. 18 CR 647-3 |
| v. | Hon. Edmond Chang |
| Antwion Williams | 06 August 2020 |

DEFENDANT'S SENTENCING MEMORANDUM

The primary issue before the Court is whether it would be unjust to to deprive Mr. Williams of safety valve protection. The only contested element of the statute is whether Mr. Williams played a supervisory role in the enterprise.

Mr. Williams was involved in the preparation and delivery of Diamond Lake's drugs, but he did not hire, recruit, dispatch, train, direct, control, or command anyone, nor did he expect or claim a greater share of profit than other participants. In regards to Mr. Williams's role, Lake was in total control. (See the attached 302 from 07 February 2020.)

Mr. Williams's involvement does not meet the threshold established by 3B1.1, note 4, and its associated Seventh Circuit case law.

This memo will focus on the safety valve issue. Given that there are no personal characteristics requiring a downward departure, we defer to the PSR and will present argument regarding personal factors warranting a low-end sentence.

## SAFETY VALVE

Under 5C1.2, the Court may lift the statutory mandatory minimum if the defendant qualifies for the safety valve. Of the conditions that must be met, Mr. Williams inarguably satisfies four out of the five applicable factors:

    (1) He has no criminal history points.

    (2) He did not use violence, a threat of violence, or possess firearms or dangerous weapons.

    (3) The offense did not result in death or serious bodily injury.

    (4) He made a truthful, thorough proffer to the government.

The only matter in dispute is whether he was, as defined by the Guidelines and safety valve statute, an organizer, leader, manager, or supervisor.

Under 3B1.1, the supervisory enhancement is not proper unless the defendant was "the organizer, leader, manager, or supervisor of one or more other participants" or "exercised management responsibility over the property, assets, or activities of a criminal organization."

In *United States v Howell*, the Seventh Circuit observed that

> "[w]hile the guidelines do not define the terms 'manager' or 'supervisor,' the application note to this section suggests that the following seven factors be considered when deciding whether to enhance a defendant's offense level: (1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning and organizing the offense; (6) the nature and scope of the illegal activity; (7) the degree of control and authority exercised over others. Id., comment. (n.4)."

527 F3d 646, 650 (2008). The Circuit has held that the enhancement applies against a defendant who "**coordinated** three substantial shipments of drugs … **hired** at least one of the two drivers …

**supervised** the loading of all three trailers … **recruited** [another] to recover the drugs from the hidden compartments when the trucks arrived in Chicago … **commanded** [another] to attend to details like preparing the warehouse for deliveries, buying a cell phone, and picking [him] up and his brother from the airport." *United States v Martinez*, 520 F3d 749, 752 (2009)(emphasis added).

The supervisory enhancement has also been upheld against defendants who arranged drug deals and then dispatched others to make the deliveries, which is ordinarily intended, as it was in Lake's operation, to limit the criminal exposure of the kingpin. See *United States v Johnson*, 489 F3d 794, 799 (2007) and *United States v. Fox*, 548 F3d 523, 530 (2007).

The key factor is the degree of control the defendant had over others. *Untied States v Vargas*, 16 F3d 155, 161 (7th Cir. 1994). It's a question of relative participation. At a minimum, a defendant must orchestrate or coordinate the activities of others. *id*. "Less than that will not do." *id*.

As an illustration of how the Circuit sees the limits of the enhancement, consider that a greater involvement in a drug scheme would not qualify for the enhancement, absent control of others, even if the defendant—unlike Mr. Williams—had been a dealer: "[s]upplying drugs and negotiating the terms of their sale do not by themselves justify a Section 3B1.1 increase, for these things do not indicate that the person who does them has a greater degree of responsibility for putting together the drug operation or a particular deal than anyone else involved." *id*. Also see *Howell*, 527 F3d at 650: "[T]here is little reason to believe that Howell [the defendant] played a managerial role. Simply put, he was acting as a dealer—he took money from Scott and gave him drugs in return. It was Scott who would then set the price and work out who he would sell to, how he would sell it, and when he would do it. In fact, he even decided who he would buy from."

MR. WILLIAMS'S ROLE

Mr. Williams's proffer, which has been accepted as candid and thorough, demonstrates that his role was not supervisory. His role was to "pick up," "drop off," "pass out," "hand out," "help package," "work at the table," and, on occasion, collect money for Lake. He did all of this at the direction of Lake. (See attached 302 from February 7, 2020.)

When Mr. Williams did collections, he had no discretion to offer discounts or re-negotiate prices: "The The price never changed. WILLIAMS always counted the money he received from the pack workers because LAKE would take it out of WILLIAMS cut if the money was short." (302, p.3)

There is no indication that Mr. Williams actually exercised control over other participants. Summary conclusions or assumptions about this alleged supervisory role aren't sufficient to justify the enhancement. Playing a significant role in the operation isn't enough.

RECOMMENDATION

Mr. Williams respectfully submits that he is eligible for the safety valve, that the mandatory minimum should not apply, and that the Court should work from the recommended, safety-valve-adjusted Guideline range of 87 to 108 months.

While he does not have 3553 factors that require a downward departure, a sentence of no greater than 87 months is warranted.

Mr. Williams has been candid and cooperative. His remorse acceptance of responsibility is not in dispute. This is the first and most significant step towards rehabilitation.

He is a loving father dedicated to entering vocational training in order to find suitable, legal employment. Given his age, he doesn't have an endless amount of time to rebuild his life and be a provider for his children during their most formative years. His goal is to return home for his children while there's still time. A low-end sentence, in light of the time he has served while this case has been pending, would give him that opportunity.

Keith J. Scherer